IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00389-RBJ

UNITED STATES OF AMERICA,

Plaintiff,

v.

5. SARA SANCHEZ,

Defendant.

---

# PLEA AGREEMENT

---

The United States of America, by and through Daniel E. Burrows, Special Assistant U.S. Attorney for the District of Colorado, and Defendant, Sara Sanchez, personally and by counsel, David R. Jones, submit the following plea agreement pursuant to D.C.COLO.LCrR 11.1.

## I. AGREEMENT

1. *Defendant Sara Sanchez's Obligations*

Defendant Sara Sanchez agrees to plead guilty to Count 9 of the Indictment, charging a violation of 20 U.S.C. § 1097(a) (2012), student loan fraud.

Defendant Sara Sanchez also agrees to pay restitution in the following amounts, which represent the total outstanding loss to each of the victims:

- $25,064 to the U.S. Department of Education,
- $577.99 to the Community College of Denver (CCD),
- $754.04 to Front Range Community College (FRCC), and
- $1525 to the State of Colorado.

COURT
EXHIBIT
1

Such restitution shall be solely the responsibility of Defendant Sara Sanchez, and such responsibility shall exist independent of any restitution order which may exist (now or in the future) with regard to any of her co-defendants in this case.[1]

Finally, Defendant Sara Sanchez agrees to waive her appellate rights, as detailed below.

2. *The Government's Obligations*

The United States agrees, under Fed. R. Crim. P. 11(c)(1)(B), that, it will not request any term of imprisonment for Defendant Sara Sanchez, whether as the sentence itself or as a condition of probation.

The United States also agrees, under Rule 11(c)(1)(B), to recommend that the Court waive the requirement for interest on Defendant Sara Sanchez's restitution judgment.

3. *Joint Obligations*

The parties jointly agree that the appropriate guideline loss amount (i.e., the intended loss) is greater than $15,000 but less than $40,000, and the appropriate restitution amount is $27,921.03 (as apportioned above).

4. *Defendant Sara Sanchez's Waiver of Appeal*

Defendant Sara Sanchez is aware that 18 U.S.C. § 3742 (2012) affords her the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, Defendant Sara Sanchez knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it

[1] The purpose of this provision is for Defendant Sara Sanchez to avoid joint and several liability. The parties have, as part of this plea agreement, attempted to parcel out Defendant Sara Sanchez's individual responsibility.

meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 8, or (3) the government appeals the sentence imposed. If any of these three criteria apply, Defendant Sara Sanchez may appeal on any ground that is properly available in an appeal that follows a guilty plea.

Defendant Sara Sanchez also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255 (2012)). This waiver provision does not prevent Defendant Sara Sanchez from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) she should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute, (2) she was deprived of the effective assistance of counsel, or (3) she was prejudiced by prosecutorial misconduct.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

(1) Defendant Sara Sanchez misapplied certain funds;

(2) such funds were provided to her under Subchapter IV of Ch. 28, Title 20, United States Code (i.e., the federal student aid program);

(3) the amount of such funds exceeded $200; and

(4) she acted knowingly and willfully.

*See* § 1097(a).

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of § 1097(a) is, as charged here: not more than five years' imprisonment; not more than a $20,000 fine, or both; not more

than three years of supervised release; a $100 special assessment fee; and restitution in the amount of $27,921.03 (as apportioned above).

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. Collateral Consequences

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. Stipulation of Facts

The parties agree that there is a factual basis for the guilty plea that Defendant Sara Sanchez will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553 (2012), additional facts may be included below that are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts that do not contradict facts to which the parties have stipulated and that are relevant to the Court's guideline computations, to other § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is in early 2013.

The parties agree as follows:

Certain members of Defendant Sara Sanchez's family were participating in a scheme to fraudulently obtain student aid funds from the U.S. Department of Education

by signing up for college in someone else's name, but directing the aid money to oneself. Although Defendant Sara Sanchez did not knowingly participate in this scheme, she became aware that it was relatively simple to enroll in a community college, apply for student aid, and get aid funds disbursed. Any funds received were, by law, supposed to be spent on expenses related to pursuing a program of higher education. However, Defendant Sara Sanchez realized that one could easily conceal how the funds were in fact spent.

Thus, Defendant Sara Sanchez applied for and received aid to attend the CCD for the spring, summer, and fall 2013 terms. However, she generally did not make a realistic effort to pursue an education at the CCD and failed or was involuntarily withdrawn from every class in which she enrolled. (There was one class in spring 2013 that she participated in fitfully and another in summer 2013 that she attended with some regularity. Nonetheless, she failed both classes.) For the spring 2014 term, she enrolled and received aid at FRCC, but her conduct with regard to pursuing an education was basically the same: she made no good faith effort to attend class and failed every course in which she enrolled (including failing an introductory-level Spanish course for the third time).

In all of these academic terms, Defendant Sara Sanchez spent most of the aid money she received on things unrelated to the pursuit of any formal education.[2] This included $706.75 that she spent on circus tickets at the Pepsi Center, as charged in Count 9. All told, Defendant Sara Sanchez had $30,106 of student aid disbursed in her name, of which $20,596.22 ended up in her pocket (after the CCD and FRCC had taken tuition, fees, and other charges off the top). Ultimately, $27,921.03 remains owing to the

---

[2] It is difficult, at this point, to determine *precisely* how much Defendant misused, but it plainly was more than $15,000.

Department of Education, the CCD, FRCC, and the State of Colorado.[3]

## VI. ADVISORY GUIDELINE COMPUTATION AND § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the U.S. Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the U.S. Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

A. The base guideline is U.S. Sentencing Guidelines Manual § 2B1.1 (U.S. Sentencing Comm'n 2018), with a base offense level of 6.

B. The intended loss (more than $15,000 but less than $40,000) adds four levels. *Id.* § 2B1.1(b)(1).

C. There are no victim-related, role-in-offense, obstruction or multiple-count adjustments.

D. The adjusted offense level therefore would be 10.

E. The parties agree that a two-level decrease for acceptance of responsibility would be appropriate under *id.* § 3E1.1(a) so long as Defendant does nothing inconsistent with accepting responsibility between pleading guilty and sentencing. The resulting offense level therefore would be 8.

---

[3] The difference between this amount and the total amount disbursed is the result of the "return to Title IV" process whereby the school returns a portion of disbursed aid to the Department of Education for students who drop out, withdraw, or fail to attend a sufficient number of class sessions.

F. The parties understand that Defendant's criminal history computation is tentative. The criminal history category will be determined by the Court based on Defendant's prior convictions. Based on information currently available to the parties, it is estimated that Defendant's criminal history category would be Category I.

G. The career offender, criminal livelihood, and armed career criminal adjustments would not apply.

H. The advisory guideline range resulting from these calculations is zero to six months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from zero months (bottom of Category I) to twenty-four months (top of Category VI). The guideline range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

I. Pursuant to *id.* § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $1000 to $10,000,[4] plus applicable interest and penalties.

J. Pursuant to *id.* § 5D1.2, if the Court imposes a term of supervised release, that term is at least one year, but not more than three years.

K. *Id.* § 5E1.1 requires a restitution order for the full amount of the victim's losses, consistent with 18 U.S.C. § 3663 (2012). The parties have stipulated those numbers are $25,064 to the U.S. Department of Education, $577.99 to the CCD, $754.04 to FRCC, and $1525 to the State of Colorado.

---

[4] The fine table from the 2014 edition of the guidelines is used for offenses, like the one here, "committed prior to November 1, 2015." U.S. Sentencing Guidelines Manual § 5E1.2(h)(1).

The parties understand that although the Court will consider their estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form) within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any § 3553 factor.

## VII. Entire Agreement

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor Defendant Sara Sanchez has relied or is relying on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 12/11/18

Sara Sanchez
Defendant

Date: 12/11/18

David R. Jones
Attorney for Defendant

Date: 1/8/19

Daniel E. Burrows
Special Assistant U.S. Attorney